Fritzinger Company, Inc. v. Commissioner.
Fritzinger Co. v. Commissioner
Docket No. 110379.
United States Tax Court
1943 Tax Ct. Memo LEXIS 452; 1 T.C.M. (CCH) 588; T.C.M. (RIA) 43076; February 12, 1943
*452 Emanuel M. Siegel, C.P.A.,B. & B. Bldg., Allentown, Pa., for the petitioner. Paul E. Waring, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding is for the redetermination of deficiencies in income and excess-profits taxes as follows: Deficiency
Income
Excess-
Year
Tax
Profits Tax
1936
$2,170.85
$407.08
1937
1,911.39
286.09
1938
1,258.85
477.13
1939
1,323.08
575.73
The sole issue for decision is whether or not respondent erred in disallowing, as deductions from gross income, a portion of the amounts paid by petitioner in each taxable year to its officers and certain employees as compensation for personal services rendered. Findings of Fact Petitioner is a Pennsylvania corporation organized on February 28, 1932, and during the years 1932 to 1939, inclusive, was engaged in the manufacture of bakery products and ice cream, and in the operation of a garage. During the years 1936 to 1939, inclusive, petitioner employed between 20 and 25 persons. James Fritzinger, father of Fred Fritzinger, Oliver Fritzinger and Minnie Hoats, owned and operated a bakery business in Walnutport up to the time of his death *453 on September 14, 1931. After the death of James Fritzinger, his wife became the owner of the business and assets of the bakery, and gave those assets to her three children, Fred, Oliver and Minnie, who transferred them to petitioner corporation in exchange for its capital stock. The garage owned by petitioner was operated separately from the bakery and employed one mechanic and one helper. Petitioner's trucks were repaired and serviced at the garage, and petitioner paid the same charges to the garage as it would have paid elsewhere. The garage also repaired and serviced cars for others than petitioner, sold gasoline and oil, accessories, and new Buick automobiles and second-hand cars. During the year 1932 only three or four Buicks were sold by the garage; business was poor and the garage lost money during some years. During the years 1936 to 1939, inclusive, petitioner's outstanding common stock consisted of 750 shares of the par value of $100 per share, and Fred Fritzinger, Oliver Fritzinger and Minnie Hoats each owned one-third or 250 shares thereof. Fred Fritzinger was president of the corporation, Minnie Hoats was vicepresident and secretary, and Oliver Fritzinger was treasurer. *454 The gross sales, salaries paid to officers, wages paid to employees and the net loss or net income of petitioner for the years 1932 to 1939, inclusive, were as follows: Gross
Salaries
Wages
Net
Net
Year
Sales
Officers
Employees
Loss
Income
1932
$ 95,737.85
$ 2,620.00
$22,366.13
$5,029.11
1933
99,769.48
4,180.00
21,375.16
2,560.65
1934
131,164.93
4,160.00
23,800.62
1,047.94
1935
155,943.82
6,500.00
28,486.95
$1,164.55
1936
151,350.95
18,600.00
27,757.40
352.30
1937
179,122.04
18,400.00
30,812.82
467.51
1938
153,054.53
17,097.76
34,045.72
248.14
1939
149,546.44
18,400.00
32,229.98
578.78
Fred Fritzinger has been in the bakery business since 1902 when he was about 15 years of age. In 1932 he was 45 years of age when elected president of petitioner corporation, and during the taxable years devoted his entire time to the business of the corporation. He was responsible for the purchase of bakery equipment, negotiation of bank loans, and exercised general supervision over the operations of the bakery business. Oliver Fritzinger was 49 years old in 1932 at the time he was elected treasurer of petitioner corporation. During *455 the taxable years he operated a garage owned by petitioner, and bought all automobiles, new and used parts, accessories, and all other purchases for the garage. He was also consulted by the other officers in regard to policies of the company. He had general supervision over the garage and devoted his entire time to the business. Minnie Hoats was the sister of Fred and Oliver Fritzinger, and in 1932 was 50 years old. She was a college graduate and worked in the bakery on Friday of each week. Also, she was frequently consulted on the business as a whole. Asa Hoats was the husband of Minnie, and he worked in the bakery every Friday. He worked for the company about two or three days each week. Thelma Fritzinger was the daughter-in-law of Fred Fritzinger, wife of his son James, and was employed by petitioner as bookkeeper. In 1932 she was approximately 23 years old. James Fritzinger was about 24 years old in 1932, and during the taxable years drove a truck for petitioner. He also made up the production sheets on Sunday and performed other duties. He worked from 55 to 60 hours a week. The amounts deducted by petitioner in its returns for the taxable years as compensation of officers *456 and certain employees, and the amounts allowed and disallowed by respondent were as follows: Deduction
Respondent
Year
Officer or Employee
Claimed
Allowed
Disallowed
1936
Fred Fritzinger
$ 8,000
$ 3,900
$ 4,100
Oliver Fritzinger
5,150
2,600
2,550
Minnie (and Asa) Hoats
5,450
2,600
2,850
Thelma Fritzinger
2,400
1,360
1,040
$21,000
$10,460
$10,540
1937
Fred Fritzinger
$ 8,000
$ 3,900
$ 4,100
Oliver Fritzinger
5,200
2,600
2,600
Minnie and Asa Hoats
5,200
2,600
2,600
$18,400
$ 9,100
$ 9,300
1938
Fred Fritzinger
$ 8,000.00
$ 3,900
$ 4,100.00
Oliver Fritzinger
3,797.96
2,600
1,197.96
Minnie Hoats
5,200.00
2,600
2,600.00
James Fritzinger
2,340.00
1,300
1,040.00
Thelma Fritzinger
2,340.00
1,300
1,040.00
$21,677.96
$11,700
$ 9,977.96
1939
Fred Fritzinger
$ 8,000
$ 3,900
$ 4,100
Oliver Fritzinger
5,200
2,600
2,600
Minnie Hoats
5,200
2,600
2,600
James Fritzinger
2,500
1,300
1,200
$20,900
$10,400
$10,500
During the years 1932 to 1935, inclusive, the mortgage indebtedness of petitioner was as follows: at December 31, 1932, $13,000; at December 31, 1933, $10,000; at December *457 31, 1934, $2,000; at December 31, 1935, none. Opinion Petitioner contends that because of the long hours devoted to its business by the officers and two employees above referred to, and the rather extraordinary services rendered, which obviated the necessity of employing additional help, the compensation paid and deducted in petitioner's returns for the taxable years was reasonable. On the other hand, respondent argues that the salaries paid during the taxable years were unreasonable and excessive, and were not paid as compensation for services actually rendered. Section 23 (a) of the Revenue Acts of 1936 and 1938 and of the Internal Revenue Code provides that in computing net income there shall be allowed deductions for certain business expenses, including "a reasonable allowance for salaries or other compensation for personal services actually rendered." Whether or not the salaries paid in the instant case constituted reasonable compensation for personal services actually rendered, we must determine in the light of the facts and circumstances disclosed by the record. A significant point which challenges attention at the outset is the fact that petitioner was a closely held family *458 corporation, all of its common capital stock being owned in equal shares by Fred and Oliver Fritzinger and Minnie Hoats, brothers and sister, who were the only officers of petitioner corporation, and the salaries which respondent has determined were excessive were paid to these officerstockholders and to James Fritzinger (son of Fred Fritzinger) and his wife, Thelma. During the taxable years, petitioner had some 20 to 25 employees and the total salaries paid to such employees far exceeded the salaries here in controversy, but respondent found no objection to the reasonableness of the wages paid to any of the employees of petitioner other than its officer-stockholders and to the son and daughter-in-law of Fred Fritzinger. In 1932, the first year of the corporation's existence, its gross sales amounted to $95,737.85; it paid total salaries to its officers of $2,620, and had a net operating loss of $5,029.11. For the taxable year 1939 petitioner's gross sales amounted to $149,546.44, it paid officer's salaries of $18,400, and reported net taxable income of $578.78. Petitioner argues that it paid low salaries to its officers in 1932-1934 because of the fact that it was paying off its *459 outstanding mortgage indebtedness which, in 1932, amounted to $13,000. However, at December 31, 1934, this indebtedness had been reduced to $2,000 and was fully paid off prior to the end of 1935. In 1935 petitioner had gross sales of $155,943.82, paid to its officers total salaries of $6,500 and reported taxable net income of $1,164.55. For 1936, the first taxable year before us, the amount paid for officers' salaries jumped from $6,500 paid in the prior year to $18,600, while gross sales were $151,350.95, and it reported taxable income of only $352.30. Yet the services performed by the three officerstockholders and the two employees mentioned were substantially the same in all years, so far as the record discloses, and it had no outstanding mortgage indebtedness after 1935. Fred Fritzinger supervised purchases of all bakery equipment, finances and general operations of the business, devoting his entire time to petitioner's affairs. In each of the taxable years he received a salary of $8,000. Minnie Hoats worked in the bakery only on Fridays, and was consulted more or less frequently on matters of general policy. Her husband worked two or three days a week in the bakery and yet she *460 received for the services of herself and husband $5,450 in 1936, and $5.200 in each of the three remaining taxable years. Respondent has determined that the salaries paid and deducted from gross income were excessive to the extent disallowed, and the burden is upon petitioner to prove that such amounts were in fact reasonable compensation for the services actually rendered. This is especially true where the salaries were paid to the sole stockholders of the corporation and to immediate members of their families. Wagegro Corporation, 38 B.T.A. 1225, 1230. We have carefully considered all of the evidence in the record before us, and we are not convinced that it so clearly establishes error as to require us to disturb respondent's determination. Decision will be entered for respondent.